## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEANEEN BROWN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1134 (RBW) |
| ) | |
| LAWRENCE M. SMALL, Secretary, ) | |
| Smithsonian Institution, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM OPINION

The plaintiff, Jeaneen Brown, brings this action alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 et seq. (2000) ("Title VII"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq. (2005) (amended 2006) ("DCHRA"). Complaint ("Compl.") ¶ 3.[1] Currently before the Court is the defendant's Motion for Summary Judgment and the plaintiff's opposition thereto.[2] For the reasons set forth below, this Court grants the defendant's motion.

### I. Factual Background

The plaintiff, an African American female, was employed by the Smithsonian Institution for approximately twelve and one half years creating visual displays for several of the museum's

---

[1] While the plaintiff asserts jurisdiction under Title VII and the DCHRA, only one count is pled, and that count is asserted specifically only under Title VII. Nonetheless, the Court will construe that the plaintiff has also asserted a violation of the DCHRA despite the pleading omission.

[2] The following papers have been submitted in connection with this motion: (1) the Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mem."); (2) the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); and (3) the Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply").

1

merchandise shops. Def.'s Mem. at 1; Def.'s Mem., Ex. 1[3] (Brown Aff. 1/16/03) ¶ 2. Beginning in May 1999, the plaintiff was employed as a Senior Display Specialist, GS-8, in the Visual Presentation Division of the museum shops. Def.'s Mem. at 1; Def.'s Mem. Ex., 1 (Brown Aff. 1/16/03) ¶ 3. In October 2001, all Display Specialist positions within the Visual Presentation Division, including the plaintiff's, were eliminated on the recommendation of Lisa Mazzio, the Director of Merchandising.[4] Compl. ¶ 9; Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 17. The elimination of these positions resulted in the termination of six employees. Compl. ¶ 9. Of the positions that were terminated, three Caucasian women, one Caucasian man, one African American man, and the plaintiff lost their jobs. Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 24. The Display Specialist positions were replaced by positions with the title of Store Merchandiser at each of the following museums: the National Museum of American History; the National Museum of Natural History; and the Air and Space Museum. Compl. ¶ 9. The Store Merchandiser position vacancy announcements noted that the responsibilities of this position, among others, would require team work, extensive day to day responsibilities for display maintenance, assistance in opening and closing the shops, handling cash, assisting customers and training sales associates. Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146). The Smithsonian initially posted two vacancy announcements for these positions, BV-01-0146 and BV-01-1047. Def.'s Mem. at 2. The two vacancy announcements were distinguishable in that BV-01-0147 specifically sought candidates already employed with the Smithsonian Institution

---

[3] In filing the exhibits associated with the motion for summary judgment and opposition, the parties did not allocate numeric demarcation for the documents. Consequently, the Court has assigned a number to each exhibit corresponding to the order in which it was submitted by the parties.

[4] The defendant refers to Lisa Mazzio as the "Chief of Merchandising". Def.'s Mem. at 1. Where the complaint is silent on Lisa Mazzio's position, the Court defers to the title recognized in the unsworn affidavit of Dana Moreland. Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 17; Pl.'s Opp'n, Ex. 1 (Moreland Aff.) ¶ 17.

and had a closing date of October 8, 2001, whereas BV-01-0146 extended the applicant pool to the general public, Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 36, and had a closing date of October 15, 2001. Id. ¶ 32. On October 3, 2001, the plaintiff applied for a position under both vacancy announcements. Compl. ¶ 10.

Dana Moreland, Human Resources Manager of the Smithsonian Institute's Corporate & Magazines Smithsonian Business Venture, Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 3, determined that the plaintiff, in addition to two other previous employees, were qualified to be considered for vacancy BV-01-0147 and contacted each applicant to arrange interviews. Id. ¶ 35. The panelists selected by the Smithsonian Institution to interview the three candidates were David Butler, Veronica Nicholas, Lester Wong, and Paul Flickinger. Id. ¶ 43. Each interview was conducted by the four panelists and identical questions were asked of every applicant. Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 49. The other two Smithsonian Institute employees interviewed for the positions, Mark Crooks and Nancy Breleux, both Caucasian, were offered Store Merchandiser positions pursuant to vacancy announcement BV-01-0147.[5] Def.'s Mem., Ex. 14 (Wong Aff.) ¶¶ 3-8; Def.'s Mem., Ex. 10 (Crooks Rating Sheets); Def.'s Mem., Ex. 11 (Breleux Rating Sheets). The plaintiff had been unable to interview for the BV-01-0147 vacancy announcement due to a previously scheduled vacation; therefore, she was interviewed only pursuant to the BV-01-0146 vacancy announcement. Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 35. The plaintiff was interviewed on October 24, 2001, Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 34; Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146), but was not selected for the position. Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 45. In fact, it appears that neither of the other two

---

[5] The plaintiff "do[es] not challenge the qualifications of the [two individuals] selected." Pl.'s Opp'n, Ex. 1 (Brown Aff. 1/16/03) ¶ 8.

candidates who were also interviewed for the BV-01-0146 vacancy on October 24, 2001, were selected, id. ¶ 46, the panelists generally agreeing that the "quality of the interviews were substandard [because] neither met a sufficient amount of the qualification factors necessary to be considered for the position." Def.'s Mem., Ex. 12 (Butler Aff.) ¶ 23.

In December 2001, a third vacancy announcement for the third Store Merchandiser position was issued. Def.'s Mem., Ex. 16 (Vacancy Announcement SBV-02-0114); Def.'s Mem., Ex. 17 (Resume Log SBV-02-0114). One hundred fifteen people applied for the position and Gary Dlacich was selected to fill the vacancy. Pl.'s Opp'n, Ex. 4 (Brown Aff. 1/8/04) ¶ 11; Def.'s Mem., Ex. 17 (Resume Log SBV-02-0114). The plaintiff had not applied for this position. Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 35.

Believing that her nonselection for the Store Merchandiser position amounted to racial discrimination, the plaintiff filed a complaint with the Office of Equal Employment and Minority Affairs ("OEEMA") in September 2002.[6] Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 12; Compl. ¶ 4. The plaintiff's decision to file such a complaint was prompted by:

> dissatisf[action] with the selection process. [She] did not receive advance warning of management's decision to abolish [her] job position. Advance notification would have allowed [her] an opportunity to seek outside employment rather than left unemployed. [She] felt management was aware of its intent to abolish the position as early as September 2001 . . . [as] there were early signs that management was in the process of reorganizing.

---

[6] The plaintiff contends that "discrimination [was] based on the fact that of the three vacant positions two of the positions were offered to Caucasian employees and because of [her] race (African American), management failed to offer one of the three positions to [her]. They rehired a Caucasian man from [her] department over [her] when [she] had seniority and more experience". Pl.'s Opp'n, Ex. 2 (Brown Aff. 1/16/03) ¶ 22. However, the plaintiff contradicts her previous statement by acknowledging earlier in her affidavit that she "does not challenge the qualifications" of Mr. Crooks and Ms. Breleux. Id. ¶ 8.

Pl.'s Opp'n, Ex. 2 (Brown Aff. 1/16/03) ¶ 15. Following the investigation by the OEEMA, Brown elected to have a hearing before the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a decision dismissing the plaintiff's complaint on April 5, 2004, and on April 15, 2004, the Smithsonian issued its Final Order and provided the plaintiff with the right to sue notice. Compl. ¶ 5. On July 2, 2004, the plaintiff commenced this action alleging that the Smithsonian Institution's actions amounted to racial discrimination in violation of Title VII. Id. ¶ 3. The defendant has now filed a motion for summary judgment.

## II.     Standard of Review

This Court will grant a motion for summary judgment under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, this Court must view the evidence in the light most favorable to the non-moving party. Bayer v. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (holding that courts must draw "all justifiable inferences" in the nonmoving party's favor and accept the nonmoving party's evidence as true). "[T]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Bias v. Advantage Intern., Inc., 905 F.2d 1558, 1561 (D.C. Cir. 1990) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). It must provide "evidence that would permit a reasonable [fact-finder] to find" in its favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Under Rule 56, "if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted. Hazward v.

Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

### III.    Title VII and the District of Columbia Human Rights Act

The plaintiff alleges violations of both Title VII, 42 U.S.C. § 2000e-16 et seq., and the DCHRA, D.C. Code § 2-1401.01 et seq.  Compl. ¶ 3.  Title VII provides that "[a]ll personnel actions affecting employees . . . in the Smithsonian Institution . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16. Under the DCHRA,

> [T]he intent of the Council of the District of Columbia . . . [is] to secure an end . . . to discrimination for any reason other than that of individual merit, including, but not limited to, discrimination by reason of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression . . . .

D.C. Code § 2-1401.01.

Where, as here, the record contains no direct evidence of discrimination, the Court must employ the familiar burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), as to both the Title VII and DCHRA claims.[7]  See George v. Leavitt, 407 F.3d

---

[7] Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference.  Randle v. LaSalle Telecomms., Inc., 876 F.2d 563, 569 (7th Cir. 1989). "[Such evidence] includes any statement or written document showing a discriminatory motive on its face."  Portis v. First Nat'l Bank of New Albany, 34 F.3d 325, 329 (5th Cir. 1994) (emphasis added); Davis v. Ashcroft, 355 F. Supp. 2d 330, 340 n.2 (D.D.C. 2005).  The plaintiff does not contend that she has produced evidence of discriminatory intent, see generally Pl.'s Opp'n., and the Court concludes that there is no such evidence in the record.

405, 412 (D.C. Cir. 2005); see also Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (McDonnell Douglas test applies to federal employees' Title VII claims); Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1553 (D.C. Cir. 1997) (noting that claims under the DCHRA are evaluated under the McDonnell Douglas framework). Thus, to establish a prima facie case of racial discrimination in this non-selection case, the plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications she was rejected; and (4) either someone not of her protected class filled the position or the position remained vacant and the employer continued to seek applicants. McDonnell Douglas, 411 U.S. at 802.

Once the plaintiff has satisfied this requirement, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment decision. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). However, the employer is not required to support that reason with objective evidence sufficient to satisfy the "preponderance of the evidence" standard. Id. at 259-60.

If the defendant presents a legitimate, non-discriminatory reason for the challenged employment decision, then "'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s], and the sole remaining issue [is] discrimination vel non." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000) (internal citations omitted). The burden then shifts to the plaintiff to show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason. See Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). In determining whether the plaintiff has met this burden, the Court must consider whether a jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to

7

attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (citing Aka, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment; rather, the Court must assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. Aka, 156 F.3d at 1289-91.

### IV.  Legal Analysis

Here, the plaintiff alleges that she was the victim of disparate treatment discrimination based on her race because the defendant failed to select her for one of the Store Merchandiser positions. Compl. ¶¶ 9-11. The defendant concedes that the plaintiff has established a prima facie case of discrimination. Def.'s Mem. at 5. Accordingly, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's non-selection. McDonnell Douglas, 411 U.S. at 802-04.

The defendant contends that the plaintiff was not selected for a variety of reasons, all relating to her performance during her interview. For example, one of the selective factors outlined in the BV-01-0146 Vacancy Announcement was the "ability to communicate effectively and courteously with staff and customers." Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146). The defendant notes that all the interviewers concluded that despite the plaintiff's experience, her "lack of enthusiasm for the new operational responsibilities of the Store Merchandiser position . . . [and] poor listening and communication skills" exhibited during the interview resulted in uniform agreement among the panelists that the plaintiff was not the best

candidate for the position.⁸  Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶45; see also Def.'s Mem. at 5.

Furthermore, "all four interviewers noted that the plaintiff . . . was not comfortable handling money," a factor distinguishing her from the other candidates.  Def.'s Mem. at 5.  For example, Mr. Crooks exhibited proficiency with financial responsibility and Ms. Breuleux exhibited enthusiasm with regard to learning and excelling with this required task and "expresse[d] a willingness to learn . . . new sale responsibilities."  Def.'s Mem. at 5-6; Def.'s Mem., Ex. 10 (Crooks Rating Sheets); Def.'s Mem., Ex. 11 (Breleux Rating Sheets).  Similarly, the plaintiff's response to a question regarding a "difficult [hypothetical] situation in gaining cooperation from others" warranted no points from three of the four interviewers.  Def.'s Mem. at 6.  The panelists similarly found "substandard" the plaintiff's response that she found her inspiration from "[drinking] a glass of wine."  Id. at 7.  The consensus amongst the panelists reflected concern with the plaintiff's inability to articulate responses, her working relationship with others, and ultimately her productivity and sincere interest in the position.  Id.

These and many other examples proffered by the defendant satisfy its obligation to articulate a legitimate non-discriminatory reason for the plaintiff's non-selection.  See Carter v. Rubin, 14 F. Supp. 2d 22, 42 (D.D.C. 1998).  Having concluded that the defendant has stated a legitimate, non-discriminatory basis for its employment decision, the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment action was made for a discriminatory reason.  Aka, 156 F.3d at 1290.  The plaintiff can attempt to discredit the employer's explanation by presenting evidence from which the finder of fact could infer

---

⁸ The interview rating sheets exhibit positive notations by the panelists with regard to plaintiff's past experience and display techniques.  Def.'s Mem., Ex. 8 (Brown Rating Sheets BV-01-0146).

discrimination including "(1) [any evidence used to establish] the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." Aka 156 F.3d at 1289. Here, the plaintiff claims that the defendant's articulated reason for not selecting her was simply pretext for discrimination. Pl.'s Opp'n at 8.[9] To support this contention, the plaintiff argues that (1) the defendant inappropriately relied solely on the plaintiff's performance in the job interview and failed to take into account her prior performance and knowledge, id. at 6; (2) the positions of Store Merchandiser and Visual Display Specialist were not significantly different and the fact that she had performed well in one demonstrated that she could successfully perform the other, id. at 6-8; (3) the plaintiff was more experienced than at least one of the individuals selected to fill the position, id. at 7; and (4) the defendant, through the elimination of the Visual Display Specialist positions, engaged in a "white-washing" of the Business Venture division as the reorganization of the division resulted in the elimination of all African American employees, id. at 9. The Court concludes, however, that for several reasons the plaintiff has failed to rebut the legitimate non-discriminatory reason put forward by the defendant.

    First, all of the plaintiff's arguments ask this Court to reexamine and second-guess the agency's personnel decisions. It is well-settled, however, that courts cannot permit themselves to be used as "super-personnel department[s] that reexamine[ ] an entity's business decision[s]." Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). Moreover, under the McDonnell Douglas framework, the

---

[9] In her opposition, the plaintiff failed to number the pages of her motion and supporting memorandum. Reference to these documents will be cited by the electronic court filing system located on the header of each page.

question is not the "correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." Fischbach v. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)). Accordingly, absent a "demonstrably discriminatory motive," this Court must defer to the agency's decision of what non-discriminatory qualities it deemed necessary in filling the Store Merchandiser position. Id. (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982). For this reason alone, the plaintiff's claims fail.

Examining each of the four challenges to the defendant's reasons for not selecting the plaintiff leads to the same result. In contending that the interview should not have been the sole deciding mechanism by which individuals were hired, the plaintiff provides no objective evidence to suggest that the adverse actions taken against her occurred because of her race, nor that similarly situated individuals of other races were treated differently than she was; rather, she "merely speculates" that her race played a role in the defendants' employment decisions. Teneyck v. Omni Shoreham Hotel, 254 F. Supp. 2d 17, 22 (D.D.C. 2003) (emphasis omitted), aff'd, 365 F.3d 1129 (D.C. Cir. 2004). First, all of the candidates were asked the same questions. Def.'s Mem., Ex. 12 (Butler Aff.) ¶ 22; Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 49. These questions pertained to past experience and additionally allowed the interviewees to shed light on what qualities they could bring to the position, demonstrating that the plaintiff had the opportunity to illustrate the strengths she had acquired during her twelve plus years with the Smithsonian during the interview. Def.'s Mem., Ex. 8 (Brown Rating Sheets BV-01-0146); Def.'s Mem., Ex. 14 (Wong Aff.) ¶ 6. The factors referenced by the plaintiff were precisely the factors specifically requested and used to determine whether the applicants exhibited the caliber

necessary to merit a Store Merchandiser interview. Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146). The plaintiff offers no evidence to the contrary.

The claim regarding similarities in the prior and current job positions also fails. The Store Merchandiser position was distinct from the plaintiff's former Visual Display Technician position in that the current position requires team work and increased levels of customer contact. See Wong Aff.; Nicholas Aff.; Flickinger Aff.; Vacancy Announcement BV-01-0146; Display Specialist Position Description). The following factors were not considered mandatory, but were used as mechanisms to determine who were the most qualified candidates. See Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146); Def.'s Mem., Ex. 3 (Display Specialist Position Description). These included "knowledge of the techniques and principles of visual merchandising in a retail environment; knowledge of basic accounting procedures to develop and follow a budget [and the] ability to lead and direct the work of others." Def.'s Mem., Ex. 7 (Vacancy Announcement BV-01-0146; Display Specialist Position Description). The position of Display Specialist also required different attributes and did not require other qualifications expected of a Store Merchandiser. For example, while a Display Specialist was required to "design[ ], fabricate[ ], and install[ ] retail displays," Def.'s Mem., Ex. 3, there was no requirement that Display Specialists have knowledge or skills in accounting or budgeting. Id. In addition, the Display Specialist position had little supervisory responsibility. Id. And, the Display Specialist position entailed little contact with customers. Id. Moreover, while the plaintiff exhibited skill in design and display installations, her resume did not reflect any abilities beyond her knowledge of visual merchandising that would indicate that she had a great deal of experience in retail services, customer support, or interaction with other employees in the prior positions she held. Def.'s Mem., Ex. 2 (Brown's Resume).

Beyond exhibiting that she possessed the mandatory requirements for the position, which were considered prior to the interview, the plaintiff was unsuccessful in persuading the panel of interviewers that she was qualified for the position. Def.'s Mem., Ex. 8 (Brown Rating Sheets BV-01-0146). Furthermore, the Court cannot take exception with defendant's view that the plaintiff's answers were less than professional, as for example, she acknowledged that she finds inspiration by drinking a glass of wine, a response the [panelists] indicated "would not be considered the most professional response . . . regardless of the candidate." Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 60.

The plaintiff's third position is similarly without merit, as she has not provided sufficient evidence to indicate that her qualifications were superior to those of the successful candidates. In discrimination cases, "the central focus of the inquiry . . . is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978) (internal quotation marks and citations omitted). Here, despite months of discovery, the plaintiff has utterly failed to provide evidence from which a reasonable jury could infer that the defendant acted in a racially discriminatory manner. See Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

Along parallel lines, the plaintiff argues the superiority of her qualifications relative to those of successful applicants reveals that the defendants asserted reason for not selecting her is a pretext. Brown's pretext argument is premised on her position that her qualifications were superior to those of the three successful applicants. Compl. at 10. It is true that "qualifications evidence may suffice, at least in some circumstances, to show pretext." Ash v. Tyson Foods, Inc., ___ U.S. ___, ___, 126 S. Ct. 1195, 1197 (2006) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 187-88 (1989) (noting that a plaintiff "might seek to demonstrate that [the

13

defendant's] claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position")). The standard the plaintiff must meet is high, however, as the District of Columbia Circuit recently held that "in order to justify an inference of discrimination, the qualification gap must be great enough to be inherently indicative of discrimination." Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006) (emphasis added); see also Aka, 156 F.3d at 1294 (concluding that the fact finder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job . . . ."). However, if the qualifications of the applicants are similar, an inference of discrimination does not arise from the employer's decision not to hire the plaintiff. Aka, 156 F.3d at 1294 ("In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call.").

      The plaintiff here has failed to establish that she was significantly better qualified than the successful applicants such that a reasonable jury could infer discrimination. Although the plaintiff had more than twelve years of display experience at the Smithsonian before she sought one of the Store Merchandiser positions, she acknowledges that she "did not have a wealth of experience" handling several responsibilities essential to that position. Def.'s Mem., Ex. 4 (Brown Aff. 1/8/04) ¶¶ 10a-d. Nonetheless, the plaintiff contends that she was more qualified than the three successful candidates because her tenure at the Smithsonian Institution was longer than theirs. The Court finds this argument unconvincing. That Brown was employed at the Smithsonian for longer than the other applicants does not establish that she was "significantly better qualified" than them such that an inference of discrimination exists. See Hammond v. Chao, 383 F. Supp. 2d 47, 57 (D.D.C. 2005) ("A court will not second-guess an employer's

personnel decision unless the disparities in qualifications are so apparent as to virtually jump off the page and slap it in the face") (internal quotation marks and citations omitted). This conclusion is fully supported by the District of Columbia's most recent case involving a failure to promote. See Barnette v. Chertoff, ___ F.3d ___, ___, No. 04-5443, slip. op. at 2 (D.C. Cir. July 7, 2006). In that case, the appellant claimed that her employer, the Customs and Border Protection agency, located within the Department of Homeland Security, discriminated against her on the basis of race and age when they failed to select her for the management position of Assistant Director for Operations. Id. Similar to the plaintiff here, the appellant in Barnette failed to produce sufficient evidence to negate the proffered non-discriminatory reason for her non-selection. Accordingly, the Circuit Court affirmed the district court's grant of summary judgment. Id. at 13.

Furthermore, the panelists who interviewed candidates for the three vacancies applied an impartial method for assessing the ability of each candidate to succeed in the position by using the same criteria to grade all applicants. Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 56. The plaintiff provides no evidence to indicate that the racially diverse interview panel considered the plaintiff's race in its non-selection decision.[10] Identical questions were administered and the same four panelists were present at every interview. Brown simply "did not present herself during the interview as someone who was overly interested in the position nor did her answers generate the best scores."[11] (Flickinger Aff.) ¶ 64. When rating and ranking the candidates for

---

[10] The panel of four interviewers was comprised of one Caucasian male, one Caucasian female, one African-American male and one Asian male. Def.'s Mem., Ex. 18 (Moreland Aff.) ¶ 43. The diverse composition of the panel bolsters the conclusion that they were seeking "the candidate who was most qualified for the position and that race and gender were not factors in their decision-making process." Reid v. Mich. Dep't of Corr., 101 Fed. Appx. 116, 120 (6th Cir. 2004).

[11] Wong, Nicholas and Butler gave similar assessments in their affidavits of Brown's performance

(continued...)

the three Vacancy Announcements, the panelists consequently gave Brown substantially lower ratings than those of the successful applicants.[12] Brown does not suggest that these ratings were not objectively reasonable or that they were the result of discriminatory animus.

Finally, the plaintiff's "white-washing" allegation is without merit as well. In order to use statistics as evidence of pretext, specifically "white-washing," the plaintiff must establish that her "statistical comparisons are meaningful." Roberson v. Snow, 404 F. Supp. 2d 79, 91 (D.D.C. 2005); see also McReynolds v. Sodexho Marriott Servs., 349 F. Supp. 2d 1, 8 (D.D.C. 2004) (citing Palmer v. Schultz, 815 F.2d 84, 99-101 (D.C. Cir. 1987) (holding that the plaintiffs established a prima facie case of discrimination when they proved, through statistical analyses, that management's subjective decision-making process for filling vacancies was discriminatory against African-Americans). The plaintiff has not met this standard. Aside from anecdotal evidence concerning the reduction in force in one small department, the plaintiff has offered an array of numbers which, though accurate, have no meaning by themselves. The numbers neither show that her department is representative of the retail division nor offer a comparison of hiring statistics by her employer based on race. See Def.'s Mem., Ex. 1 (Brown Aff. 1/16/03); Pl.'s Opp'n, Ex. 4 (Brown Aff. 1/8/04). Moreover, the plaintiff has failed to offer statistics comparing rates of promotion at the Smithsonian Institution between similarly situated black and white employees or even comparing the hiring rates among black and white applicants relative to their respective presence in the applicant pool. See Metrocare v. Wash. Metro. Area Transit

---

[11](...continued)
during her interview. Def.'s Mem., Ex. 12 (Butler Aff.); Def.'s Mem., Ex. 14 (Wong Aff.); Def.'s Mem., Ex. 15 (Nicholas Aff.).

[12]  The total rankings given to Crooks and Breleux ranged from 45-50, whereas Brown received substantially lower scores with an average in the low 20's from each panelist. Def.'s Mem., Ex. 8 (Brown Rating Sheets BV-01-0146).

Auth., 679 F.2d 922, 930 (D.C. Cir. 1982)).

Based on all of the above, the Court concludes that no reasonable jury could conclude that plaintiff was so significantly better qualified than the other candidates that an inference of racial discrimination exists as to Brown's failure to be selected for the vacant Store Merchandiser positions. Furthermore, the plaintiff has introduced no other evidence which suggests that the Smithsonian Institution's reasons for Brown's non-selections were pretexts for discrimination. For these reasons, the Smithsonian Institution is entitled to summary judgment on plaintiff's Title VII and DCHRA claims.[13]

## IV.   Conclusion

The record is wholly devoid of evidence sufficient to demonstrate the existence of a genuine issue of material fact with respect to Brown's discrimination claims. Therefore, the defendant's motion for summary judgment is granted.

**SO ORDERED** this 7th day of July, 2006.[14]

REGGIE B. WALTON<br>
United States District Judge

---

[13]   Although the plaintiff's complaint and all the papers filed with the Court allege racial discrimination under Title VII and the DCHRA, some portions of the exhibits hint at a claim of retaliation. See Def.'s Mem., Ex. 1 (Brown Aff. 1/16/03) ¶ 11. These allegations do not appear in the complaint or the papers filed in this Court; therefore, the Court need not address them. Nonetheless, even if this Court could conclude that a retaliation claim was properly before it, which it cannot, it would have to be dismissed. See Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985) ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."). To the extent the plaintiff claims that her non-selection was due to her filing of a discrimination claim in 2001, her argument is without merit. First, there is no indication in any exhibit that the panelists were aware of the plaintiff's prior protected activity. Def.'s Mem., Ex. 13 (Flickinger Aff.) ¶ 16; see Buggs v. Powell, 293 F. Supp. 2d 135, 150-51 (D.D.C. 2003). Second, there is no causal connection between the filing of her discrimination complaint and the refusal to consider her for the Store Merchandiser position, as over five years had elapsed since the filing of her earlier complaint. This hiatus is far too great, in the absence of other evidence, to demonstrate the necessary causal link. See Brodetski v. Duffey, 141 F. Supp. 2d 35, 42-43 (D.D.C. 2001) ("By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed for a prima facie case of retaliation.").

[14]   An Order consistent with the Court's ruling accompanies this Memorandum Opinion.